COMMISSION ON SPECIAL REVENUE *v.* HARVEY ZISKIS

SUPERIOR COURT HARTFORD COUNTY FILE NO. 217952

Memorandum filed July 13, 1978

*Carl R. Ajello,* attorney general, and *Richard Sheridan,* assistant attorney general, for the plaintiff.

*Alexander A. Goldfarb,* for the defendant.

ASPELL, J. This case arises out of the commission's desire, in its investigation of Hartford Jai-Alai, Inc., and certain individuals, to obtain testimony from Harvey Ziskis. Ziskis is willing to testify, but he fears that some of his answers could be incriminating. Although the commission has granted Ziskis immunity under General Statutes § 12-565, Ziskis alleges that the statute is inadequate under the fifth and fourteenth amendments to the United States constitution in that it (1) fails to prevent the use of his testimony and its fruits in a federal prosecution; and (2) fails to prevent the use of fruits of his testimony in a state prosecution.

The relevant section of § 12-565 is as follows: ". . . At any hearing ordered by the commission, the commission or such agent having authority by law to issue such process may subpoena witnesses and require the production of records, papers and documents pertinent to such inquiry. No witness under subpoena authorized to be issued by the provisions of this section shall be excused from testifying or from producing records, papers or documents on the ground that such testimony or the production of such records or other documentary evidence would tend to incriminate him, *but such evidence or the records or papers so produced shall not be used in any criminal proceeding against him. . . .*" (Emphasis added.)

First, with respect to the matter of federal prosecution, the court is of the opinion that the statute does afford adequate protection from use in a federal prosecution. The key case on this question is *Murphy* v. *Waterfront Commission of New York Harbor,* 378 U.S. 52. There, the defendants were granted immunity from prosecution under state laws, but they nonetheless refused to answer questions at a hearing on the ground that the answers might tend to incriminate them under federal law, to which the grant of immunity did not extend. Furthermore, the United States Supreme Court case law, at that time expressed in *Feldman* v. *United States,* 322 U.S. 487, explicitly allowed federal prosecutorial use of compelled testimony from a state proceeding. In the *Murphy* case the United States Supreme Court overruled *Feldman* and reversed the conviction of civil and criminal contempt. The court stated the new rule: "[W]e hold the constitutional rule to be that a state witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits

cannot be used in any manner by federal officials in connection with a criminal prosecution against him. We conclude, moreover, that in order to implement this constitutional rule and accommodate the interests of the State and Federal Governments in investigating and prosecuting crime, the Federal Government must be prohibited from making any such use of compelled testimony and its fruits. This exclusionary rule, while permitting the States to secure information necessary for effective law enforcement, leaves the witness and the Federal Government in substantially the same position as if the witness had claimed his privilege in the absence of a state grant of immunity." *Murphy* v. *Waterfront Commission of New York Harbor,* supra, 79. It should be noted how the court stated that it would implement the rule: not by declaring the state statute unconstitutional so long as that statute protects against both the testimony and its fruits, but rather by creating an exclusionary rule binding upon the federal government. The *Murphy* court went on to say (pp. 79–80): "It follows that petitioners here may now be compelled to answer the questions propounded to them. At the time they refused to answer, however, petitioners had a reasonable fear, based on this Court's decision in *Feldman* v. *United States,* supra, that the federal authorities might use the answers against them in connection with a federal prosecution. We have now overruled *Feldman* and held that the Federal Government may make no such use of the answers. Fairness dictates that petitioners should now be afforded an opportunity, in light of this development, to answer the questions. . . . Accordingly, the judgment of the New Jersey courts ordering petitioners to answer the questions may remain undisturbed. But the judgment of contempt is vacated and the cause remanded to the New Jersey Supreme Court for proceedings not inconsistent with this opinion." The United

States Supreme Court, of course, had to use this remedy; under the supremacy clause of the United States constitution, article six, it is unlikely that a state statute could control a federal prosecutor.

Finally, it should be noted that *Zicarelli* v. *New Jersey State Commission of Investigation,* 406 U.S. 472, upheld the constitutionality of the New Jersey immunity statute, the relevant parts of which state: "a. If . . . a person refuses to answer a question or questions or produce evidence of any kind on the ground that he will be exposed to criminal prosecution or penalty or to a forfeiture of his estate thereby, the commission may order the person to answer the question or questions or produce the requested evidence and confer immunity as in this section provided. . . . b. If upon issuance of such an order, the person complies therewith, he shall be immune from having such responsive answer given by him or such responsive evidence produced by him, or evidence derived therefrom used to expose him to criminal prosecution or penalty or to a forfeiture of his estate, except that such person may nevertheless be prosecuted for any perjury committed . . . ." N.J. Stat. Ann., § 52:9M-17.

Since the Connecticut statute refers to "any criminal proceeding," it is quite clear that the Connecticut statute is adequate protection against the use of the testimony by federal prosecutors. Any information gathered under it cannot be used against Harvey Ziskis by the federal prosecutors; however, this does not say that the statute is adequate protection against self-incrimination in Connecticut state proceedings in the first place, which is the next issue raised by Ziskis.

With respect to the second issue, the court is of the opinion that the statute does not afford adequate protection from self-incrimination in a state prosecution.

Ziskis' second contention is that the Connecticut statute fails to cover "fruits" of the testimony; that is, evidence that may be uncovered because of "leads" from the protected testimony. Ziskis asserts that the statute must protect against "use *and* derivative use" for it to withstand the constitutional test. He does not insist that he be granted transactional immunity (immunity from prosecution, as opposed to merely a prohibition on the use of the testimony and its fruits), which according to *Zicarelli* v. *New Jersey State Commission of Investigation,* supra, and *Kastigar* v. *United States,* 406 U.S. 441, is not required.

*Counselman* v. *Hitchcock,* 142 U.S. 547, clearly supports the position of Ziskis. In that case the United States Supreme Court for the first time considered a constitutional challenge to an immunity statute. That federal statute, a reenactment of the Immunity Act of 1868 (15 Stat. 37), provided that no "evidence obtained from a party or witness by means of a judicial proceeding . . . shall be given in evidence, or in any manner used against him . . . in any court of the United States." *Counselman* v. *Hitchcock,* supra, 560. Despite a grant of immunity and order to testify under that act, the witness, asserting his fifth amendment privilege against compulsory self-incrimination, refused to testify before a federal grand jury. He was then judged to be in contempt of court. The United States Supreme Court, on appeal, construed the statute as affording a witness protection against only the use of the specific testimony compelled from him under the grant of immunity. This interpretation of the statute meant that it "could not, and would not, prevent the use of his testimony to search out other testimony to be used in evidence against him." *Counselman* v. *Hitchcock,* supra, 564. Since the statute would permit the use against the immunized

witness of evidence derived from his compelled testimony, it did not protect the witness to the same extent that a claim of the fifth amendment privilege would protect him. Thus, under the principle that a grant of immunity cannot supplant the privilege and is not sufficient to compel testimony over a claim of the privilege unless the scope of the grant of immunity is coextensive with the scope of the privilege, the witness' refusal to testify was held proper. The court did not interpret the statute so as to cover derivative use. The assistant attorney general, obviously seeing that the Connecticut statute also fails to protect against derivative use, argues that the statute should be interpreted to do so. He fails, however, to note why the United States Supreme Court would interpret the Connecticut statute differently from the federal statute. A subsequent history of the statute reveals that sixteen days after the *Counselman* decision, a new federal immunity bill was introduced and passed. That bill provided transactional immunity (immunity from prosecution). In 1970, Congress cut back the immunity to just use and derivative use, putting the phrase concerning derivative use in parentheses: ". . . the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order." 18 U.S.C. § 6002. *Ullmann* v. *United States,* 350 U.S. 422, reaffirmed *Counselman,* and, more recently, *Kastigar* v. *United States,* 406 U.S. 441, in upholding the present immunity statute, reaffirmed *Counselman* (pp. 453–54): "We hold that such immunity from use and derivative use is coextensive with the scope of the priv-

ilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege. While a grant of immunity must afford protection commensurate with that afforded by the privilege, it need not be broader. . . . Our holding is consistent with the conceptual basis of *Counselman*. The *Counselman* statute, as construed by the Court, was plainly deficient in its failure to prohibit the use against the immunized witness of evidence derived from his compelled testimony." The Connecticut statute is also "plainly deficient" for the same reason.

Finally, it should be noted that "[t]he power to grant immunity from prosecution is not inherent in any office of government; it may only be conferred by explicit statutory provision. This holding finds strong and almost universal support among authorities in this country." *State* v. *Brown,* 321 A.2d 478, 484 (Me.). Where a statute is in derogation of the common law or creates a liability where formerly none existed, it should receive a strict construction and should not be extended, modified, repealed or enlarged in scope by the mechanics of construction. *Edmundson* v. *Rivera,* 169 Conn. 630, 633. Hence the Connecticut statute must be strictly construed, and is thus unconstitutional as a violation of Ziskis' right against self-incrimination under the fifth and fourteenth amendments.

It is the conclusion of this court that while General Statutes § 12-565 adequately protects against the use of testimony by federal prosecutors, it fails to pass constitutional muster by not prohibiting the fruits of compelled testimony from being used in criminal proceedings.

The demurrer is hereby sustained.